Date signed September 22, 2011



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Heather M. Kotche, | * | Case No. | 10-30082 |
| | * | Chapter | 13 |
| | * | | |
| | * | | |
| Debtor. | * | | |

## MEMORANDUM OPINION

Debtor commenced this Chapter 13 case by the filing of a Petition under Chapter 13 on August 31, 2010.  On October 15, 2010, the United States Trustee (the "UST") filed his Objection to Confirmation of Chapter 13 Plan and Motion to Convert Case to Chapter 7 (The "UST Motion").  The UST Motion alleged that Debtor had failed to disclose on her schedules valuable jewelry which the UST asserted Debtor owned, some of which Debtor acknowledged but had not amended schedules to include.  As to additional alleged jewelry, the UST asserted that Debtor was not truthful in her explanation of the alleged pre-bankruptcy disposition of the assets.  The asserted conclusion in the UST Motion is that Debtor is not proceeding in good faith in her proposal of a plan.

At the hearing to consider confirmation of the Debtor's plan, Debtor's counsel appeared and made an oral motion on behalf of Debtor to dismiss the case.  The court denied confirmation and set an evidentiary hearing upon the competing motions by the UST to convert the case to Chapter 7 and

by Debtor to dismiss. An evidentiary hearing was held on February 23, 2011.  Both the UST and

Debtor filed memoranda and the motions were taken under advisement.

There are two questions to be resolved.  Has the conduct of Debtor, including her now

pending motion to dismiss been undertaken in bad faith, as that term is used in the seminal case of

*Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S. Ct 1105 (2007)?  If this factual

question is answered in the affirmative, a question of law then arises.  Debtor asserts that 11 U.S.C.

§ 1307(b)[1] provides to Debtor an absolute right to dismiss her Chapter 13 case, if the case has not

previously been converted from another Chapter of the Bankruptcy Code.  It is the Debtor's position

that such right cannot be denied on the basis of a finding of bad faith.  To the contrary, the UST

argues that a bad faith exception to the Debtor's right to dismiss legally exists as an extension of the

holding of the United States Supreme Court in *Marrama*.  The Supreme Court has not spoken to this

question, nor has the United States Court of Appeals for the Fourth Circuit. The courts in this

District also have not published an opinion deciding this question.  Other federal courts have split in

their opinions addressing the issue.

The court will first examine the factual question as to the Debtor's conduct.  The

uncontradicted testimony by the Debtor's former husband and Exhibits 1 thru 10 evidence that after

the Debtor's marriage to her former husband[2] they purchased a number of pieces of jewelry for her

that had substantial value, including a diamond wedding ring set with a separately purchased center

---

[1]Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

[2]Debtor married her former husband April 21, 2001 and they were divorced May 7, 2010. Transcript of Trial held on February 23, 2011, at p.11.

2

diamond stone of 3.64 karats,[3] a tennis bracelet,[4] two diamond bracelets,[5] a diamond necklace, a watch, and a cocktail ring referred to in testimony as the Debtor's "right hand ring," and perhaps another diamond bracelet.[6]  Additional jewelry purchases included earrings.

The Debtor's Schedule B, signed with a declaration under oath, testified that Debtor only owned $50.00 in otherwise not-described jewelry.  The Debtor's sworn answers to questions 7, 8 and 10 of her filed Statement of Financial Affairs testified that she had made no gifts, and had suffered no losses of property within one year before her bankruptcy case was filed, nor otherwise transferred any property out of the ordinary course of business or financial affairs within two years immediately preceding the filing.  The Schedules and Statement of Financial Affairs have never been amended.

The Debtor's former husband testified that in the third week of March 2009, Debtor delivered the wedding ring and two bracelets to him to sell at a time their marriage was failing.  He further testified that approximately 9 days later he gave the jewelry back to her to hold unless it was needed to cover expenses for the house.  The Debtor's testimony is that the only items of jewelry delivered to her former husband had been the wedding rings and that she had never received those back.  In addition, the couple had purchased a baby grand piano which Debtor retained after the couple separated.[7]

_____

[3] *Id*. at 12, 14.

[4] *Id.* at 14.

[5] *Id.* at 15.

[6] *Id*. at. 16.

[7] *Id.* at 23, 24.

After filing her bankruptcy case, on October 14, 2010, Debtor testified under oath at the meeting of creditors conducted pursuant to Section 341.  During that testimony, Debtor admitted that she had a pair of earrings described by her former husband as 1.75 carats (each).[8]  Debtor also testified that she had a "Fossil" watch described by her former husband as "diamond studded," and a circle necklace encrusted with diamonds, as well as a Tiffany clock pendant.[9]  Subsequently, on December 6, 2010, at a further examination pursuant to Federal Rule of Bankruptcy Procedure 2004, Debtor initially stated that she had a diamond cocktail ring (referred to as a "right hand" ring),[10] but did not have the Tiffany clock pendant and could not find the earrings.[11]  She subsequently testified that she had the earrings and the diamond cocktail "right hand" ring while living at her previous address but now could not find them.  She posited that a friend, Mark Mozier, who lived with her, may have taken them when he moved out.[12]  Debtor admitted that she had owned a baby grand piano but testified that she had given it to movers who had taken it when she left her home.[13]

Mark Mozier testified at the hearing.  He stated that he had a relationship with Debtor after her separation from her husband and had "furniture and stuff" at the Crofton home in November 2009.  He related that he had seen the Debtor's large diamond wedding ring in her safe deposit box at that time and as late as April 2010.  He further stated that after April 2009 he saw Debtor wear

---

[8] U.S. Trustee Exh. 19 at 23.

[9] *Id*. at 41.

[10] U.S. Trustee Exh.18 at 17.

[11] *Id*. at 24.

[12] *Id.* at 35, 36.

[13] *Id.*

4

some pendants, her watch, and her tennis bracelet at a function in November 2009.  In addition Debtor was wearing the "right hand" ring in March 2010.  Further Mr. Mozier denied that he had not taken any of her jewelry when he moved out of the house.

Debtor testified at trial that she was currently living with her mother and did not have the items that she was alleged to have.  She did not know what happened to a number of pieces of jewelry.

From this evidence, the court finds that Debtor has clearly not been complete or forthright in her disclosures on Schedule B and answers on her Statement of Financial Affairs.  Although Debtor promised at her Section 341 Meeting to amend these documents, no amendments have been filed. As shown by the summary of testimony set forth above, and as pointed out by counsel for the UST in closing argument, the Debtor's recounting of what she owned and retains, changes from one sworn statement to the next.  None of her statements concerning what happened to valuable assets is reflected in any answer stated on her Statement of Financial Affairs[13] in which she states that no property was transferred after August 31, 2008.  While an appearance of animus in her former husband's demeanor as a witness and style of questioning as recorded at the Section 341 meeting may weaken the weight to be given to some of his testimony, the court observed no indication that Mr. Mozier's testimony was less than credible.  Further, the Debtor's vague assertions of losing track of various pieces of diamond jewelry cannot be found sufficient to rebut the evidence that she had such items and either retains them today, or disposed of them within the period required to be disclosed under her Statement of Financial Affairs.

---

[13] U.S. Trustee Exh. 20.

5

The Supreme Court in *Marrama* did not define what conduct constitutes bad faith.  While the United States Court of Appeals for the Fourth Circuit has not opined directly as to what constitutes bad faith for purposes of preventing a debtor's dismissal of a case using Section 1307 (nor opined if bad faith prevents debtor's exercise of such "right" to dismiss, see discussion *infra.),* the Court has addressed the concept of good faith and the lack thereof in a Chapter 13 case as to the confirmation of a plan.  *See Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982).  The Court recognized that "no precise definition can be sculpted to fit the term 'good faith' for every Chapter 13 case."  *Id.* at 972. However, the Court explained that "the generally accepted definition of 'good faith' as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976)(repealed), provides general parameters."[14]  *Id*.  The Fourth Circuit reiterated this approach to the question of good faith in the subsequent case of *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir. 1986).  One of the factors listed in *Neufeld* to be considered is the debtor's honesty in representing facts.  *Id.* at 152.

The United States Court of Appeals for the Fifth Circuit, in extending the *Marrama* holding to a debtor's motion to dismiss under Section 1307, affirmed the bankruptcy court's finding of bad faith applying a "clearly erroneous" standard of review to factual findings of the bankruptcy court that are substantially similar to the facts found in the case now before this court.  *In re Jacobsen,* 609 F.3d 647 (5th Cir. 2010).  The Court in *Jacobsen* found "ample evidence" revealing that the Debtor had interests in assets that were undisclosed on his schedules and that he had made transfers that

---

[14] In *Deans*, the Court cited Collier on Bankruptcy which explained "'Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan . . . .'"  *Id.* (citing 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978)).

were not disclosed on his statement of financial affairs.  *Id.* at 662.  Such conduct, along with other

facts in that case were found sufficient to support the finding of bad faith.  *Id.*

Having considered all of the evidence, including the demeanor of the witnesses, and giving

weight to the substantial number and value of assets that were and remain unaccounted for by

Debtor, the lack of credible explanation as to such false statements by omission, and the

inconsistencies in the Debtor's sworn statements about the assets, the court finds that Debtor has

conducted her Chapter 13 case in bad faith and by her motion to dismiss seeks to escape from

bankruptcy after the misconduct has been brought to the attention of the court by the UST Motion.

For this reason, the Court holds that the Debtor's Motion to Dismiss is brought in bad faith.

Upon such finding, the second question then arises.  Is there a bad faith exception to a

Chapter 13 Debtor's right to dismiss under Section 1307(b)?

Courts are split on the issue of whether Section 1307(b) affords a debtor an "absolute" right

to dismiss a Chapter 13 case.  Prior to *Marrama* many courts found the right to be absolute, focusing

on the plain meaning of the language in Section 1307(b).  In *Barbieri v. RAJ Acquisition Corp.*, 199

F.3d 616 (2nd Cir. 1999), the United States Court of Appeals for the Second Circuit held that a

Chapter 13 debtor has an absolute right to dismiss as long as the case had not been previously

converted from a Chapter 7, 11, or 12.  In *Barbieri*, the Court stated that the term "shall" in Section

1307(b) "generally is mandatory and leaves no room for the exercise of discretion."  *Id.* at 619.

Furthermore, the Court held that the "mandatory nature" of Section 1307(b) becomes clearer when

read in light of the permissive language of Section 1307(c), which states that the bankruptcy court

"may" dismiss.  *Id.*.  The *Barbieri* Court concluded that the interplay between those two Sections

was evidence of congressional intent to preserve the voluntary nature of the Bankruptcy Code.

7

Subsequent courts addressing the issue had upheld *Barbieri's* ruling. *See e.g., In re Dulaney*, 285 B.R. 10, 14 (D.Colo. 2002) ("the statutes' language unequivocally and unconditionally demonstrates that the debtor has an absolute right to dismissal."); *In re Greenberg*, 200 B.R. 763, 767 (Bankr. S.D.N.Y. 1996) ("The rationale is that chapter 13 is completely voluntary, and on both constitutional and policy grounds, no one should be compelled to work for her creditors."). However, subsequently, the United States Supreme Court entered its opinion in *Marrama*.

In *Marrama*, the Chapter 7 debtor filed inaccurate schedules and statements, withholding information pertaining to assets of the estate that the debtor had shifted into a trust within the year prior to the date of filing his petition. 549 U.S. at 368-70, 127 S.Ct. at 1108-09. To protect the asset from the Chapter 7 trustee, the debtor moved to convert his case from a Chapter 7 to a Chapter 13, to which the Chapter 7 trustee objected on the grounds of bad faith filings. The Supreme Court agreed with the Chapter 7 trustee and denied conversion. The Court stated that Section 706(d) of the Bankruptcy Code expressly conditions the debtor's right to convert his case on the debtor qualifying as a Chapter 13 debtor and the Court held that the debtor's bad faith conduct in the case made him ineligible for Chapter 13 status. *Id.* at 373-74. The Court further held that "[n]othing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 374-75, 127 S.Ct. at 1111. Thus, when read in light of Sections 706 and 1307(c) of the Bankruptcy Code, the *Marrama* Court held that a bad faith debtor does not have an absolute right to convert his or her case.

In the wake of the *Marrama* decision, courts have disagreed as to whether a debtor has an absolute right to dismiss despite a finding of bad faith.  In *In re Williams*, 435 B.R. 552 (Bankr. N.D. Ill. 2010), the Court held that a Chapter 13 debtor had an absolute right to dismiss his or her case, regardless of its finding that the debtor acted in bad faith.  The Court focused on the language of Section 1307(b), arguing that the term "shall" does not afford the court any discretion in the debtor's request to dismiss.  The *Williams* Court distinguished its case from the *Marrama* decision stating that the "eligibility limitation in § 706(d) was central to *Marrama's* reasoning." *Id.* at 557.  The Court went on to state that "[w]ithout a separate statutory provision limiting § 1307(b) in the same way that § 706(d) limits § 706(a), the right that §1307(b) accords debtors to obtain dismissal of unconverted cases cannot be limited." *Id.* at 558.  The *Williams* Court also noted that when requests under Section 1307(b) and (c) are in conflict with one another, courts must choose only one provision. *Id.*  In the case of Section 1307 the Court explained that because Section 1307(b) is the more specific provision of the two, it trumps the more general language of Section 1307(c). *Id.* at 559.  Finally, the Court held that the power of Section 105(a) is not applicable in situations where it would conflict with another provision of the Code because "'the power conferred by § 105(a) is one to implement rather than override.'" *Id.* at 560 (quoting *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004).

In contrast to *Williams*, other courts have opined that a debtor who is acting in bad faith does not have an unqualified right to dismiss a Chapter 13 case under Section 1307(b).  The United States Court of Appeals for the Ninth Circuit held in *In re Rosson*, 545 F.3d 764 (9th Cir. 2008) that a debtor's right of dismissal is not absolute, but qualified by the ability of a bankruptcy court to deny dismissal "to prevent an abuse of process," under Section 105(a), more specifically, when a debtor

9

has acted in bad faith.  *Id.* at 774.  Not long after *Rosson*, the United States Bankruptcy Court for the Eastern District of New York held in *In re Armstrong*, 408 B.R. 559 (Bankr. E.D.N.Y. 2009) that "the Second Circuit's decision in *Barbieri* is no longer good law" after *Marrama* because "'the important point established by *Marrama* is that even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process.'" *Id.* at 569 (quoting *In re Rosson,* 545 F.3d at 773 n.12)).  The *Armstrong* Court explained that Section 1307(b) contains an anti-waiver provision which is identical to that found in Section 706(a), and that *Marrama* held a provision of the Code protecting a borrower from waiver is not "a shield against forfeiture" of the right to convert to another chapter if he or she acts in bad faith.  *Id.* at 571 (quoting *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. at 374-75, 127 S. Ct. 1105). Consistent with *Marrama*, the Court held that nothing in the language of Section 706(a) or Section 1307(c) limits its ability to take action in response to bad faith conduct. *Id.* at 570.

The *Armstrong* decision has been supported by subsequent courts.  In *In re Jacobson,* 609 F.3d 647 (5th Cir. 2010),  the Court of Appeals for the Fifth Circuit rejected any construction of Section 1307(b) that would give "an abusive debtor an escape hatch", and the Court interpreted Section 1307 as not providing the debtor an absolute right to dismiss.  *Id.* at 660.  The Court also noted that while Section 1307(b) and (c) allow a bankruptcy court to dismiss a case where a debtor has acted in bad faith, the Court's interpretation does not read the statute in a way that would allow the courts to force debtors to remain in Chapter 13 against their will.  *Id.* at 661.  Furthermore, the Court stated that Section 105(a) does not give the bankruptcy court unlimited power, but rather, based on *Marrama* and the equitable principles underlying the Bankruptcy Code, bankruptcy courts have the power to deny a request for dismissal made by a bad faith debtor.  *Id.*

This court has come to the conclusion that the *Rosson* and *Jacobson* cases are persuasive. In *Marrama*, the Supreme Court reiterated that bankruptcy laws were enacted to protect the "honest but unfortunate debtor." 549 U.S. at 374, 127 S.Ct. at 1111 (quoting *Grogan v. Garner*, 498 U.S. 279, 297, 111 S. Ct 654 (1991)).  Further, the Court observed that the statutory provision making unenforceable a debtor's waiver of right under Section 706(a) is not a shield against a debtor's forfeiture of the Section 706(a) right to convert by fraudulent conduct.  *Id.*  The same waiver provision is contained in Section 1307(b) as to a debtor's right to dismiss and it must be concluded that it is also susceptible to forfeiture by fraudulent conduct by the debtor.

The *Marrama* decision included an analysis of eligibility under Section 109(e) that is focused upon in *Williams* as distinguishing the applicability of the outcome in *Marrama* from application to the exercise of Section 1307(b).  While it is correct that Section 109(c) is inapplicable to the analysis of the question presented under Section 1307(b), that distinction this court finds unpersuasive. Rather, this court recognizes that *Marrama* expressly reiterates  "the inherent power of every federal court to sanction 'abusive litigation practices.'" *Id.* at 376, 127 S.Ct. at 1112 (citation omitted).

There is no indication that Section 1307(b) is intended to provide the dishonest debtor a right to misuse the protections of a bankruptcy case and then escape with impunity.  Such result would permit abusive practices and render null and void any judicial power to prevent or protect against such fraudulent practices.  The court is not convinced that Congress has legislated such a draconian departure from accepted law, nor that the conclusions stated by the Supreme Court in *Marrama* are to be so narrowly applied.  Furthermore, the Supreme Court's holding in *Marrama* that a debtor's bad faith conduct can forfeit his or her right to conversion, appears equally applicable.

11

Having found that the Debtor's motion to dismiss this case was filed in bad faith, and is an abuse of the bankruptcy process, the motion will not be granted.  The court agrees that under the circumstances of this case, a debtor may not be "held captive" in a Chapter 13 case.  However, denial of the Debtor's motion to dismiss will not have such a captive effect.  The court's finding of bad faith constitutes cause for conversion of the case to Chapter 7 pursuant to Section 1307(c).  Accordingly, the court will grant the UST Motion to Convert.

An Order in accordance with this Memorandum will be entered.


cc:    Debtor
       Debtor's counsel
       Chapter 13 Trustee
       United States Trustee

**End of Memorandum**